ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JOSEPH TARTAKOVSKY (CABN 282223)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7063
    Fax: (415) 436-7234
    Email: joseph.tartakovsky@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:14-CR-00196-022-CRB |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Date:    August 10, 2023<br>Time:    10:00 a.m.<br>Court:   Hon. Charles R. Breyer |
| SERGE GEE, | |
| Defendant. | |

## I.    INTRODUCTION AND OFFENSE CONDUCT

    In July 2014, a 228-count Superseding Indictment charged 29 defendants with crimes that included money laundering, unlicensed firearm dealing, murder for hire, honest services fraud, illegal gun possession, contraband cigarette trafficking, and distribution of controlled substances.  Dkt. 370. Kwok Cheung Chow—better known as "Shrimpboy" Chow—was at the center of this vast criminal operation.  The defendant here, Serge Gee, was charged in Counts 1 (18 U.S.C. § 1962(d) – Conspiracy to Conduct the Affairs of an Enterprise Through a Pattern of Racketeering); and Counts 167, 168, 172,

173, 177, 178, 179, 180, 185, 186, 189-194, 196-199, 202, and 203 (18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(1)(B)(i) – Money Laundering).

On April 27, 2023, Gee pleaded guilty to Count 177, for Money Laundering 18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(1)(B)(i).  Dkt. 2351.

*                    *                    *

## A.      Gee's conduct in Count 177

Over a decade ago an FBI undercover agent was introduced to Raymond "Shrimpboy" Chow and George Nieh (Chow's right-hand man), and their associates, portraying himself as an East Coast member of La Cosa Nostra.  PSR ¶ 100.  He purported to seek to have them launder the UC's money, supposedly derived from illegal gambling, bookmaking, sports betting, drugs, and marijuana grows.  *Id.*  In March 2012, the UC expressed his interest in laundering money for associates of Nieh and Chow.  *Id.*

Chow and Nieh introduced the UC to Xiu Ying Ling Liang, also known as Elaine Liang, who asked the UC to launder her associates' drug proceeds from the East Coast to San Francisco.  PSR ¶ 102.  Liang, in turn, introduced her son—the defendant here, Serge Gee—who revealed to the UC that his and his mother's drug-distribution network extended to Georgia, New York, and Massachusetts.  *Id.*  The UC agreed to disguise the source of their money for a fee.  Liang and Gee then introduced the UC to co-defendants Anthony Lai, Gary Chen, and others, who facilitated the cash deliveries for laundering.  *Id.*

The money laundering conduct to which Gee pleaded guilty occurred on September 3, 2013, when his associates delivered $76,030 in cash to an undercover FBI agent in Atlanta.  That agent arranged for the delivery via texts and calls with Gee.  On September 6, 2013, another undercover FBI agent, posing as an associate of the first agent, met Gee outside a Starbucks in San Francisco and delivered a FedEx box containing $73,060. The undercover agent retained a service fee of about 4%. The purpose of this transaction was to launder proceeds from Gee's trafficking of about 200 pounds of marijuana a week out of Atlanta, where he sold it for $3,800 per pound.  Dkt. 2351 (Gee Plea Agreement), ¶ 2.

**B.**     **Gee's relevant conduct and its connection to the Chow criminal enterprise**

The Atlanta-San Francisco transaction charged in Count 177 is one of eleven similar money laundering transactions between August 9, 2013 and December 5, 2013.  *See* Addendum A, below, for a complete list.  These transactions totaled $1,557,175.  Each time, Gee or an associate would deliver cash to a purported associate of the undercover agent in Boston or Atlanta—in fact undercover FBI agents— and then Gee or an associate would meet with the original undercover agent in San Francisco a few days later and receive the equivalent amount of cash, minus the original agent's service fee.  *Id.*  Gee's intent was to move disguised quantities of cash from the East Coast to San Francisco and to promote a conspiracy to distribute, and the actual distribution of, controlled substances.  *Id.*

Evidence at Chow's trial showed that Gee's money laundering was facilitated and approved by Chow and took place as part of the activities of larger Chow's criminal enterprise.[1]  The UC testified that he developed a business relationship with Liang and Gee through Chow and Nieh, who brokered business between the UC and Liang and Gee.  Chow and Nieh expected to be paid for this business— business, the UC said, "brought forth by Mr. Chow."  *See* Chow trial transcript, v. 11, at 1610, 1625.

Shrimpboy Chow was charged in seven of the eleven transactions that Gee is responsible for (the transactions represented by Counts 167, 172, 177, 179, 185, 189, and 193), and Chow was convicted of all of those charges at trial and sentenced to life imprisonment.  Nieh pleaded guilty to all of the money laundering charges that involved him and still awaits sentencing because of health issues.  Defendants Gary Chen and Anthony Lai were sentenced after admitting that they helped launder proceeds from drug trafficking engaged in by himself and codefendants Liang, Gee, and others.  *See* Dkt. 1668, 1669.

Chow, too, knew that he was profiting from Gee's conduct.  For instance, the UC, at a meeting with Nieh and Chow at a restaurant on October 2, 2013, told Chow that he disliked that Gee had worn a hat or shirt bearing profanity.  Chow responded that that was not the way that Gee usually dressed, but that he was selling in the Black community and was dressing appropriately for that role.  At the meeting, the UC gave Chow $1,500 for facilitating the multiple money laundering transactions with Liang and

---

[1] The government filed a statement discussing the relative culpability of defendants in the Chow conspiracy.  Gee's associate and mother, Elaine Liang, came in the shierarchy, from most culpable to least, after Raymond Chow, George Nieh, Leslie Yun, James Pau, and Michael Mei.  Dkt. 1927 at 6-8.  Gee was not mentioned in this statement because he was, at the time, a fugitive.

GOV. SENTENCING MEMO FOR SERGE GEE
3:14-CR-00196-022-CRB

Gee.  By this time, the UC had also paid Nieh at least $1,600 for his role in setting up the transactions. Months later, on January 9, 2014, the UC paid Chow another $1,500 and gave Nieh another $500, telling Chow that this was payment for the money laundering deals with Liang and Gee.

In short, it was only through Gee's relationship to Chow's dangerous enterprise and his approval of Gee's criminal activity that Gee was able to take advantage of the opportunity to move nearly $1.6 million in proceeds from a marijuana trafficking operation from the East Coast to the West Coast.

## II.    APPLICABLE GUIDELINES RANGE

The government agrees with the PSR's Guidelines calculation, which finds a total offense level of 29, and (at Criminal History Category I), a Guidelines range of 87-108 months.  PSR ¶ 67.[2]

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2S1.1(a)(1) [and § 2B1.1(b)(1)(I)]: | 24 |

Specific offense characteristics under U.S.S.G. Ch. 2

— § 2S1.1(b)(1)(B):  defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical

— §2S1.1(b)(2)(B):  defendant was convicted under 18 U.S.C. § 1956

| | |
|---|---|
| Acceptance of Responsibility: | - 3 |
| Total Adjusted Offense Level: | 29 |

The government agrees with Probation's recommendations as to supervised release, a fine, restitution, and the special assessment.

---

[2] The government agrees with the PSR (at ¶ 67. Notes 1 &2) that the plea contained two typographical errors—USSG § 2S1.1(a)(1) should be USSG § 2S1.1(a)(2) and the Total Offense Level adds up to 29, not 26.  The government's recommendation was in any event capped by the plea agreement at 36 months, a substantial downward variance from the Guidelines.

GOV. SENTENCING MEMO FOR SERGE GEE
3:14-CR-00196-022-CRB

### III.    SENTENCING RECOMMENDATION

The government recommends that the Court impose a sentence of 34 months' imprisonment. This represents a 53-month downward variance from the low end of the Guidelines.  It is four months more than the sentence recommended by Probation.  And it is two months less than the sentence received by Gee's mother, Elaine Liang, *see* Dkt. 2009, at whose sentencing the government sought 97 months, *see* Dkt. 1926.  The government proposes this substantial variance in recognition of the facts that, first, Mr. Gee willingly returned from abroad to face this proceeding, and second, that he was more distant from the core of the Chow enterprise than his mother.

But the basic fact is that Gee was a participant in the Chow enterprise.  It is true that his involvement in the enterprise was limited to laundering of money that was proceeds of marijuana trafficking, and that his activities involved no violence or firearms.  This places Gee in a different position on the seriousness continuum from certain other RICO conspirators.

At the same time, Gee participation in Chow's enterprise benefitted him personally and helped further Chow's power, status, and income.  Chow and Nieh, at the heart of the enterprise, were involved in setting up Gee and Liang with the UC.  Chow and Nieh monitored the progress of the transactions and pocketed money from the successful movement of Liang's and Gee's illegal drug proceeds from coast to coast, as facilitated by the UC.  Those are considerations that warrant a substantial sentence.

The defense points to the sentences of certain co-defendants as comparators. Dkt. 2362 at 9-10. But the comparisons are not all that apt.  Gary Chen pleaded guilty to money laundering and received a probationary sentence, but as the government explained, in joining Probation's recommendation of a 20-month sentence, Chen was "one of the many young individuals that Chow and Chow's close associates preyed upon to carry out their larger schemes. Defendants Elaine Liang and Serge Gee (currently a fugitive) were clearly the leaders of this portion of the criminal enterprise and Chen was one of several workers handling money, and apparently drugs, for them." Dkt. 1838 at 2.  The defense also notes the probationary sentence given to Anthony Lai, but here, too, government joined Probation's recommendation for an 18-month sentence mostly in recognition of the fact that Lai was working for Liang and Gee.  Dkt. 1839 at 2.  Kevin Siu received a year and a day for laundering $187,000 in what

GOV. SENTENCING MEMO FOR SERGE GEE
3:14-CR-00196-022-CRB

1  he, Siu, believed to be illegal profits—a reverse money laundering count, where the money is not

2  actually illegal proceeds—and reaped $17,000 for himself.  Dkt. 1958 at 11 (Gov't. Sentencing Memo).

3  Gee, by contrast, is responsible for traditional money laundering that totaled $1,557,175—eight times as

4  much as Siu—yet the government seeks a sentence only about three times as long as Siu's.

5  **IV.    CONCLUSION**

6          For these reasons, the government respectfully recommends that the Court sentence Serge Gee to

7  imprisonment for a period of 34 months, to be followed by a term of supervised release of three years.

9  DATED: August 3, 2023                                Respectfully Submitted,

11                                                       ISMAIL J. RAMSEY
                                                         United States Attorney

13                                                       _____/s/_____
14                                                       JOSEPH TARTAKOVSKY
                                                         Assistant United States Attorney

GOV. SENTENCING MEMO FOR SERGE GEE
3:14-CR-00196-022-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ADDENDUM A:  TRANSACTIONS INVOLVING GEE

| Count | Date | Delivery of Cash in Atlanta / Boston | Delivery of Cash in San Francisco |
|---|---|---|---|
| 167 | 8/9/13 | Gee delivers $93,870 to UCE | |
| 168 | 8/11/13 | | UCE 4599 delivers $90,180 to Liang & Gee |
| 172 | 8/26/13 | Gee delivers $155,900 to UCE | |
| 173 | 8/27/13 | | UCE 4599 delivers $149,900 to Gee |
| 177 | 9/3/13 | Liang/Gee associates deliver $76,030 to UCE | |
| 178 | 9/6/13 | | UCE 3322 delivers $73,000 to Liang & Gee |
| 179 | 9/9/13 | Liang/Gee associate delivers $203,000 to UCE | |
| 180 | 9/10/13 | | UCE 4599 delivers $195,000 to Liang & Gee |
| 185 | 9/16/13 | Liang/Gee associate delivers $107,400 to UCE | |
| 186 | 9/18/13 | | UCE 4599 delivers $103,000 to Liang & Gee |
| 189 | 9/26/13 | Gee delivers $145,020 to UCE | |
| 190 | 9/26/13 | | UCE 4599 delivers $139,200 to Liang |
| 191 | 10/1/13 | Liang/Gee co-D Chen delivers $189,780 to UCE | |
| 192 | 10/1/13 | | UCE 4599 delivers $182,110 to Gee and co-D Lai |
| 193 | 10/4/13 | Liang/Gee associate delivers $150,000 to UCE | |
| 194 | 10/8/13 | | UCE 4599 delivers $144,000 to Gee |
| 196 | 10/15/13 | Chen delivers $102,790 to UCE | |
| 197 | 10/15/13 | | UCE 4599 delivers $98,678 to Lai |
| 198 | 10/23/13 | Chen delivers $134,145 to UCE | |
| 199 | 10/24/13 | | UCE 4599 delivers $128,800 to Lai |
| 202 | 12/5/13 | Chen delivers $199,240 to UCE | |
| 203 | 12/6/13 | | UCE 4599 delivers $191,270 to Lai |

7